UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PERSHING LLC**                                        **CIVIL ACTION**

                                                          **No. 14-2549**
**VERSUS**                                             **c/w 16-15220**

                                                         **REF: ALL CASES**

**THOMAS KIEBACH ET AL.**                              **SECTION I**

## ORDER AND REASONS

### I.

In this consolidated action, Pershing LLC seeks to confirm an arbitration panel's decision in its favor. The defendants, "Louisiana Retirees," Dr. Thomas J. Kiebach, et al., seek to vacate the arbitration panel's decision. Since the lawsuits were consolidated, the focus has been on whether the Louisiana Retirees are entitled to any discovery before this Court renders its decision.

The Court referred the discovery issue to the U.S. Magistrate Judge. Before rendering a decision, the Magistrate Judge entertained multiple rounds of briefing from the parties, heard oral arguments, held multiple status conferences, considered the statutes, regulations, and case law, and reviewed *in camera* the numerous documents that Pershing submitted through three separate productions. The three separate productions were necessitated by Pershing's inexplicable and repeated failure to fully comply with the Magistrate Judge's discovery orders. Those repeated unresponsive productions—at least one of which, the redacted production, was clearly intentionally unresponsive—needlessly delayed the resolution of the discovery issues.

As it stands, the Magistrate Judge ultimately decided that only some of the documents produced by Pershing for *in camera* review should be produced to the Louisiana Retirees. *See* R. Doc. No. 132. The documents which the Magistrate Judge held non-discoverable were either not relevant to the present matter or were protected from disclosure by the Suspicious Activity Report ("SAR") privilege under federal law. As to the remaining documents which the Magistrate Judge ordered produced to the Louisiana Retirees, the Magistrate Judge held that they were relevant and that they fell outside the protection of the SAR privilege.

Now before the Court are Pershing's objections[1] to the Magistrate Judge's order. Pershing argues that all of the documents the Magistrate Judge ordered produced to the Louisiana Retirees are protected from disclosure by the SAR privilege, and it asks this Court to overturn the Magistrate Judge's order. With respect to the issues discussed herein, the order of the Magistrate Judge may be reversed "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). For the following reasons, the objections are denied.

## II.

The Court previously discussed the SAR privilege in its order and reasons denying Pershing's first objection to the Magistrate Judge's discovery order, *see* R. Doc. No. 114, though at that time the Court made no ruling as to the applicability of the SAR privilege to the documents at issue. Instead, the Court simply noted that

---

[1] R. Doc. No. 133.

2

"the applicability of the SAR exception to the documents described by Pershing is not as black-and-white as Pershing would have the Court believe," and that "this Court is not prepared to hold that Magistrate Judge North's decision to order the creation of a privilege log and have the documents produced for an *in camera* review was clearly erroneous or contrary to law." *See* R. Doc. No. 114, at 9.

Because the Court has already discussed, albeit briefly, the fundamental aspects of the SAR privilege, and considering that the parties agree on the basic legal framework for analyzing whether a document related to SARs may be disclosed, the Court wastes no time here repeating that framework. The Court instead proceeds to directly address each of Pershing's arguments as to why the Magistrate Judge's decision was clearly erroneous or contrary to law.

### A.

Pershing first argues that the Magistrate Judge erred in finding that Pershing's Incident Reports were prepared in the ordinary course of business as part of Pershing's process of internally investigating potential suspicious activity. Pershing argues that this conclusion flies in the face of the "sole piece of evidence in the record regarding the role that Incident Reports play at Pershing: the declaration of Alma Angotti, a former senior enforcement official . . . who reviewed Pershing's [Anti-Money Laundering] program." *See* R. Doc. No. 133-1, at 3. Ms. Angotti swears that the Incident Reports are created expressly for the purpose of determining whether activity is in fact suspicious, requiring a SAR, and that the reports are "not a record created in [Pershing's] ordinary course of business about a transaction, an

3

account or a business relationship that may give rise to Pershing's suspicions." *See* R. Doc. No. 89-3, at 5.

As an initial matter, the Court observes that Ms. Angotti is not an employee of Pershing, but rather an expert whom Pershing hired to review its Anti-Money Laundering ("AML") program.[2] Her declaration states that she "understand[s] the general steps undertaken by Pershing to file SARs." *See* R. Doc. No. 89-3, at 4. To the extent Ms. Angotti is offered her opinion, based on a review of Pershing's program, as to whether the Incident Reports were prepared in the ordinary course of business, the Magistrate Judge was not obligated to accept her conclusion packaged as an expert opinion.

There is also reason to doubt Ms. Angotti's conclusion. It goes without saying that "detecting fraud is simply part of a financial institution's ordinary course of business," *see* R. Doc. No. 114, at 8, and that Pershing—like other financial institutions—would investigate suspicious activity even if it was not required by federal law to adopt AML programs and prepare SARs. Pershing does not argue otherwise. Instead, it simply asserts that "[t]here is nothing to suggest Incident Reports are used for loss prevention, employee discipline, credit decisions, or other matters." *See* R. Doc. No. 133-1, at 5. Notably absent from Pershing's briefing is any explanation of how its procedures for detecting loss prevention and the like—which undoubtedly exist—are implemented separately from the AML program. Pershing seems content to rely on the fact that the Louisiana Retirees have not introduced evidence that Pershing's loss

---

[2] It is unclear from her declaration and from Pershing's brief whether Ms. Angotti was hired before or after this litigation commenced.

4

prevention procedures overlap with Pershing's AML procedures. However, as the party advocating for the privilege, it is *Pershing's burden* to demonstrate that the Incident Reports are not created in the ordinary course of business. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.").

As Pershing recognizes, the applicability of the SAR privilege largely turns on whether documents were created "in the ordinary course of business in monitoring unusual activity," as opposed to being documents "of an evaluative nature intended to comply with federal reporting requirements." *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 41 (1st Cir. 2015) (internal quotation marks and citation omitted). However, what Pershing fails to acknowledge is that, "although a bank may undertake an internal investigation in anticipation of filing a SAR, it is also a standard business practice for banks to investigate suspicious activity as a necessary and appropriate measure to protect the bank's interests, and the internal bank reports or memorandum generated by the bank regarding such an investigation are not protected by SAR privilege." *In re Whitley*, 2011 WL 6202895, at *4 (Bankr. M.D.N.C. Dec. 13, 2011) (Stocks, M.J.) (cited favorably in *JPMorgan*, 799 F.3d at 41).

The Magistrate Judge concluded that Pershing's Incident Reports are reports created in the ordinary course of business. The Court does not find the Magistrate Judge's decision to be clearly erroneous or contrary to law.[3]

---

[3] The same reasoning holds true for the Magistrate Judge's decision with respect to the redacted Summary Reports, which, as redacted, the Magistrate Judge found to be the equivalent of the Incident Reports.

B.

Pershing also argues that this Court should reverse the Magistrate Judge's decision because the Incident Reports and redacted versions of the Summary Reports are evaluative in nature. As set forth in the *JPMorgan* opinion cited above, documents shielded from discovery from the SAR privilege are, generally speaking, those "of an evaluative nature intended to comply with federal reporting requirements." 799 F.3d at 41. Pershing seizes on the "evaluative" characterization of privileged documents in an attempt to bring the contested documents within the SAR privilege, arguing that the Incident Reports and redacted Summary Reports are "evaluative" because they "include a Pershing employee's thoughts and impressions about *why* activity appears suspicious." *See* R. Doc. No. 133-1, at 8 (emphasis in original).

But even if Pershing is correct in its characterization of the contested documents, Pershing neglects to cite another relevant consideration the First Circuit emphasized in the *JPMorgan* case—the one which was ultimately determinative of the Magistrate Judge's inquiry. As the First Circuit wrote in *JPMorgan*, "[u]nder the existing law and guidance previously described, the *key query* is *whether any of [the] documents suggest, directly or indirectly, that a SAR was or was not filed.*" *See* 799 F.3d at 43-44 (citation omitted) (emphasis added). The Magistrate Judge concluded that "none of the Incident Reports reviewed by the Court qualify for protection under the SAR privilege" because the reports "are devoid of any information by which the reader can determine whether the matter identified therein progressed beyond the

6

making of the report, much less whether an actual SAR was ever created." *See* R. Doc. No. 132, at 3-4.

Having reviewed the Incident Reports and the redacted Summary Reports, the Court agrees with the Magistrate Judge's conclusion and it adopts his opinion as its own. The Magistrate Judge carefully reviewed the disputed documents and only ordered produced those documents which were not protected by the SAR privilege and relevant to the present controversy. The majority of the documents the Magistrate Judge reviewed *in camera* were not ordered to be produced. Far from being "clearly erroneous" or "contrary to law," the Magistrate Judge's decision clearly and thoughtfully comports with the weight of the case law as interpreted by this Court.

### III.

For the foregoing reasons,

**IT IS ORDERED** that Pershing's objections are **DENIED** and that Pershing is **ORDERED** to immediately comply with the Magistrate Judge's discovery order (R. Doc. No. 132).

New Orleans, Louisiana, April 6, 2017.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**