UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PERSHING LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 14-2549**<br>**REF: ALL CASES** |
| **THOMAS KIEBACH ET AL.** | **SECTION I** |

### ORDER AND REASONS

In this consolidated action, Pershing LLC seeks to confirm an arbitration panel's decision in its favor. The defendants, Thomas Kiebach et al., the "Louisiana Retirees," seek to vacate the arbitration panel's decision. Before the Court are cross motions[1] for summary judgment filed by each side. For the following reasons, the Court grants the motion filed by Pershing LLC and denies the motion filed by the Louisiana Retirees. The Court therefore confirms the arbitration award.

### I.

The Louisiana Retirees are investors who suffered financial losses as a result of R. Allen Stanford's Ponzi scheme. Pershing is a limited liability company that provides financial services to brokerage firms. Pershing was a clearing broker for Stanford Group Company, a broker-dealer controlled by Allen Stanford which sold worthless securities to the Louisiana Retirees. The Louisiana Retirees believe that Pershing is liable to them for the $80 million in damages they allegedly sustained due to the Ponzi scheme. They claim that Pershing, as Stanford Group Company's

---

[1] R. Doc. Nos. 151, 154.

clearing broker, failed to exercise due diligence in its business relationship with Stanford Group Company and failed to disclose adverse financial information which would have resulted in the Ponzi scheme being uncovered sooner than it was.[2]

Because the contracts between Pershing and each of the Louisiana Retirees required disagreements to be arbitrated before the Financial Industry Regulatory Authority ("FINRA"), the Louisiana Retirees submitted their claims against Pershing to a FINRA panel. After a two week hearing at which the panel heard over 1,600 pages of testimony from fifteen witnesses and considered over 900 separate exhibits, the panel ruled in Pershing's favor. After the ruling, the Louisiana Retirees and Pershing each filed actions to vacate and confirm the arbitration panel's decision, respectively. Those lawsuits were ultimately consolidated before this Court.

While the Louisiana Retirees advance several arguments for vacating the panel's decision, their primary argument centers on whether the panel arbitrarily and improperly denied the Louisiana Retirees documents to which they were entitled.

---

[2] The Stanford Ponzi scheme has given rise to numerous lawsuits which were the subject of review by the Fifth Circuit and the Supreme Court. The Supreme Court has summarized the scheme as follows:

> Essentially, Stanford and his companies sold . . . certificates of deposit in Stanford International Bank. Those certificates were debt assets that promised a fixed rate of return. The plaintiffs expected that Stanford International Bank would use the money it received to buy highly lucrative assets. But instead, Stanford and his associates used the money provided by new investors to repay old investors, to finance an elaborate lifestyle, and to finance speculative real estate ventures.

*Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1064 (2014) (internal citations and quotation marks omitted).

As explained in the next section, an arbitration panel's decision cannot be overturned simply because it was incorrect. *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016). But under the Federal Arbitration Act (FAA), an arbitration panel's refusal to hear evidence material and pertinent to the controversy can result in vacatur of the arbitration award when the refusal deprived a party of a fundamentally fair hearing. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300-01 (5th Cir. 2004).

Although discovery in the context of a motion to confirm or vacate an arbitration award is extremely limited, *see Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542-544 (5th Cir. 1987), the district court may allow limited discovery at its discretion, *see Karaha Bodas Co.*, 364 F.3d at 304-05. This Court allowed the Louisiana Retirees to engage in limited discovery in order to determine whether the documents denied the Louisiana Retirees during the arbitration proceeding fell within the scope of the privileges claimed by Pershing. After an *in camera* review of the documents by the U.S. Magistrate Judge, the Court ultimately ordered that Pershing produce to the Louisiana Retirees some of the documents which the Louisiana Retirees were denied by the arbitration panel. *See* R. Doc. No. 137. The Court found—under the specific facts of this case—that a review of those documents not produced in arbitration would best allow this Court to measure whether and, if so, the extent to which the Louisiana Retirees were prejudiced by the omission of such documents.

That covers the proceedings thus far. Now the question is simply whether, considering the produced documents in conjunction with the record of the arbitration proceeding, the Louisiana Retirees have satisfied one of the recognized grounds for vacating an arbitration award. The Court sets forth the standard which governs that inquiry below.

## II.

"In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow." *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 211 (5th Cir. 2016) (internal quotation marks omitted). "Under this review, an award may not be set aside for a mere mistake of fact or law." *Id.* (internal quotation marks omitted). "Instead, Section 10 of the FAA provides the only grounds upon which a reviewing court may vacate an arbitrative award." *Id.* (internal quotation marks omitted). Section 10 of the FAA provides the following grounds for vacating an award:

1) where the award was procured by corruption, fraud, or undue means;

2) where there was evident partiality or corruption in the arbitrators, or either of them;

3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it. *Cooper*, 832 F.3d at 544. Vacating an arbitration award is an unusual and "draconian remedy." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 286 (5th Cir. 2007).

### III.

The Louisiana Retirees assert three bases for vacatur in this lawsuit. According to their motion, they contend "(1.) that the arbitration proceeding was fundamentally unfair because severe prejudice occurred to the Louisiana Retirees when Pershing did not disclose to the Louisiana Retirees [certain documents which were not produced by Pershing until this Court ordered them produced in this lawsuit]; (2.) the obvious partiality and bias of the arbitrators because of the apparent 'assumed veracity' of Pershing when the Panel allowed Pershing to serve as the judge and jury on defining the scope of the documents withheld under attorney client privilege and the SARs/AML privilege; and (3.) that the Panel committed manifest error reviewing the evidence that was actually presented to the arbitration hearing based upon the review standard of the Second Circuit because of the application of New York Law." R. Doc. No. 154-7, at 3-4. The Court addresses each of the arguments in turn.

### A.

The Louisiana Retirees first argue that the panel's decision should be vacated pursuant to section 10(a)(3) of the FAA because the panel denied the Louisiana Retirees access to key documents, and the withholding of the documents was

prejudicial to the Louisiana Retirees to the extent it rendered the arbitration proceeding fundamentally unfair. Their position is essentially that the Louisiana Retirees were unable to prove their case and were unable to refute false testimony offered by Pershing witnesses during the arbitration proceeding because they did not have certain documents which they have now had an opportunity to review.

When considering arguments for vacatur such as this one, the Fifth Circuit has instructed as follows:

> An arbitrator is not bound to hear all of the evidence tendered by the parties. He must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments. It is appropriate to vacate an arbitral award if the exclusion of relevant evidence deprives a party of a fair hearing. Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award. A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.

*See Karaha Bodas Co.*, 364 F.3d at 300-01. (internal quotation marks omitted). "The court may not refuse to enforce an arbitral award solely on the ground that the arbitrator may have made a mistake of law or fact." *Id.* at 288.

The arbitration panel held that Pershing was not required to produce to the Louisiana Retirees certain categories of documents which Pershing claimed were privileged. The documents consist *inter alia* of emails which Pershing claimed were protected under the attorney-client privilege and "Incident Reports" which Pershing says it uses to begin the process of internally investigating potential suspicious activity. Pershing claims the second category of documents are protected by the SAR privilege. *See* R. Doc. Nos. 114, 132, and 137 (discussing the SAR privilege). The

6

prejudice claimed by the Louisiana Retirees really stems from two separate decisions of the arbitration panel: (1) the decision not to review the documents *in camera* before deciding whether Pershing should produce them; and (2) the decision on the merits of the claimed privileges.

With respect to the first decision—not to review the documents *in camera*—the Court observes that nothing in the FINRA arbitration rules requires *in camera* review prior to ruling on a discovery motion. To the extent the Louisiana Retirees claim that the manner in which the panel resolved discovery issues rendered the proceeding fundamentally unfair, the Court rejects that argument. Even if this Court would have proceeded differently, this Court cannot conclude that the entire arbitration proceeding was tainted because of it. *See Bain Cotton Co. v. Chesnutt Cotton Co.*, 531 F. App'x 500, 501 (5th Cir. 2013) ("Regardless whether the district court or this court—or both—might disagree with the arbitrators' handling of Bain's discovery requests, that handling does not rise to the level required for vacating under any of the FAA's narrow and exclusive grounds.").

"A FINRA arbitration panel has great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings." *Rubenstein v. Advanced Equities, Inc.*, 2014 WL 1325738, at *15 (S.D.N.Y. Mar. 31, 2014). Indeed, even in federal court the decision whether to conduct an *in camera* inspection is wholly within the discretion of the district court. *See Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 348 (5th Cir. 2014). The record reveals that discovery was extensively litigated before the panel, which decided six motions to

compel, received multiple rounds of briefing from the parties, and held a telephonic hearing to address the SAR privilege and the request for an *in camera* review. *See* R. Doc. No. 151-2, at 4-7. Ultimately, the Louisiana Retirees received over 121,000 documents from Pershing totaling over 635,000 pages. *See* R. Doc. No. 151-2, at 5. The discovery process was not fundamentally unfair. *See Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003) (abrogated on other grounds) ("In the case at hand, hearings were held and each disputed item was given consideration by the panel; thus, more than adequate opportunity was afforded to the parties and the minimum standards of fundamental fairness were met.").

With respect to the second decision complained of by the Louisiana Retirees—the panel's decision that the attorney-client privilege and the SAR privilege shielded all of the documents withheld by Pershing—the Court also concludes that the decision did not render the arbitration proceeding fundamentally unfair. "The court may not refuse to enforce an arbitral award solely on the ground that the arbitrator may have made a mistake of law or fact." *See Karaha Bodas Co.*, 364 F.3d at 288. Even if this Court disagrees with the arbitration panel regarding the appropriate scope of those privileges, the Court does not find that the Louisiana Retirees were deprived of a fair hearing as a result of the decision.

The documents produced to the Louisiana Retirees in this litigation are cumulative of the documents produced to the Louisiana Retirees in the arbitration proceeding. A review of the record shows that Pershing produced a vast amount of material during the arbitration proceeding which evidenced that high-level Pershing

employees were aware as early as 2006, to one degree or another, of potential "red flags" regarding Stanford Group Company. *See* R. Doc. No. 161-5, at 21-22; R. Doc. No. 161-7. The Louisiana Retirees marshaled this evidence in support of their position that Pershing knew or should have known that there were serious questions about Stanford Group Company's legitimacy during the period that the Ponzi scheme was in operation, and that Pershing should have done more sooner to raise the alarm regarding Stanford Group Company. The arbitration panel rejected the Louisiana Retirees' arguments. There is no reasonable basis to suggest that if the new documents had been produced during the arbitration proceeding, the result would have been different.

Because the Louisiana Retirees were able to introduce comprehensive evidence supporting their theory of the case, the deprivation of additional arguably relevant evidence did not deprive the Louisiana Retirees of a fair hearing. *See Karaha Bodas Co.*, 364 F.3d at 302 (arbitrators' refusal to grant a continuance and additional prehearing discovery did not deprive losing party of a fair hearing where he "was able to present comprehensive evidence" on the topics for which the additional discovery was sought); *see also Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009) ("Similarly, prohibiting Caughran from admitting the tapes or transcripts of his conversations with Horvath did not deprive Caughran of a fair hearing. Horvath testified at the arbitration hearing. Thus, Caughran had the opportunity to cross-examine him on the perjury allegations.").

To the extent the Louisiana Retirees argue that the newly produced documents directly contradict the testimony of Pershing witnesses in the arbitration, the Court finds the Louisiana Retirees' position to be a mischaracterization of the record. Pershing witnesses acknowledged that there were concerns raised regarding Stanford Group Company as early as 2006. The primary focus of the arbitration proceeding was not whether Pershing had notice of suspicious behavior by Stanford Group Company, but rather whether Pershing acted reasonably to address their concerns and—more importantly—even if Pershing acted unreasonably, whether Pershing violated any legal duty owed to the Louisiana Retirees. (Pershing argued during the arbitration that Pershing could have no liability for fraud committed by Stanford Group Company even if Pershing should have discovered that fraud or done more to prevent it). All of these issues were exhaustively litigated.

In any event, to the extent that the record is ambiguous, any doubts or uncertainties must be resolved in favor of upholding the arbitration award. *See Cooper*, 832 F.3d at 544. Having reviewed the record, the recently produced documents, the briefs, and considering the applicable legal standard, the Court concludes that the deprivation of the newly produced documents during the arbitration process did not result in a fundamentally unfair proceeding. The Louisiana Retirees' first argument for vacatur pursuant to section 10(a)(3) of the FAA is rejected.

**B.**

The Louisiana Retirees next argue that the panel's decision should be vacated pursuant to section 10(a)(2) of the FAA because there was evident partiality or corruption by the arbitrators. They say the bias was made evident in three ways. First, the Louisiana Retirees claim that the panel's failure to conduct the *in camera* review proves the panel was biased in favor of Pershing. Second, the Louisiana Retirees argue the panel was biased because the CEO of Pershing during the relevant time period, Richard Brueckner, was a former member of the FINRA Board of Governors. Third, the Louisiana Retirees contend that the panel was inclined to rule in favor of Pershing because Pershing asserted a so-called "FINRA defense," in which Pershing supposedly argued to the panel that regulator misconduct or negligence served as a defense to Pershing, i.e. that if Pershing was liable to the Louisiana Retirees then FINRA and the SEC must be deemed equally culpable for failing to discover the Ponzi scheme sooner.

**1.**

Pershing argues that the Louisiana Retirees have waived the right to challenge the arbitration award on the basis of bias. "A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings. Its failure to do so results in waiver of its right to object." *Dealer Computer Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012). There is an exception to the rule where the party seeking to vacate was not

on notice of the bias during the arbitration proceeding. *Id.* at 727-28. The exception does not come into play here.

The Louisiana Retirees attempt to cobble together an objection on the basis of partiality during the arbitration proceeding by citing to various other objections they voiced during the arbitration. The Louisiana Retirees point out that they objected to the panel's failure to conduct an *in camera* review, that they strenuously objected to Mr. Brueckner not testifying in person in the order desired by the Louisiana Retirees during the arbitration proceeding, and that they objected to Pershing advancing the FINRA defense. *See* R. Doc. No. 160-6, at 18-19. But those objections to discrete decisions of the arbitration panel are distinct from objections to the arbitration panel itself. In order to preserve an objection that the arbitration panel was biased against them, the Louisiana Retirees had the obligation to make an objection to the bias of the panel during the arbitration hearing. *See Dealer Computer*, 485 F. App'x at 727. The Louisiana Retirees did the opposite.

At the beginning of the arbitration hearing, counsel for the Louisiana Retirees stated that they accepted the panel. At the end of the arbitration hearing, counsel for the Louisiana Retirees agreed that they had enjoyed "a full and fair opportunity" to present their case. *See* R. Doc. No. 151-6, at 1787. Counsel for the Louisiana Retirees even thanked the panel for its time. *See* R. Doc. No. 151-6, at 1791 ("We appreciate y'all's efforts."). At that point, the Louisiana Retirees already knew of all the panel's decisions described above, yet they failed to object. It was only once the arbitration panel ruled against them that the bias argument emerged. The waiver

12

rule is designed to prevent just such a circumstance from occurring. *Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 272 F. App'x 174, 176 n.4 (3d Cir. 2008) ("The defendants argue that the plaintiffs waived their right to argue that the arbitrators were biased because they did not raise their objections to the arbitrators, and in fact, thanked the arbitrators for conducting the proceedings. Other Courts of Appeals would agree that the plaintiffs have waived this argument."). The Louisiana Retirees have waived the right to seek vacatur based on the alleged bias of the panel.

**2.**

Even if the Louisiana Retirees had not waived the argument, however, it is clear that they cannot meet the standard for vacating the arbitration award. "To establish evident partiality based on actual bias, the party urging vacatur must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to one party." *Caughran*, 354 F. App'x at 852 (internal quotation marks omitted). "This is an onerous burden, because the urging party must demonstrate that the alleged partiality is direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.* (internal quotation marks omitted).

The Court has already addressed the Louisiana Retirees' argument that the panel should have reviewed Pershing's documents *in camera*. The FINRA rules do not require such an *in camera* review, and placed in the context of the lengthy discovery proceedings as a whole the panel's decision not to review the documents does not suggest bias.

13

As for Mr. Brueckner's relationship with FINRA, the U.S. District Court for the Southern District of New York recently rejected an identical argument by a losing party to an arbitration, and the Court finds its reasoning persuasive and applicable here. *See Freedom Inv'rs Corp. v. Hadath*, 2012 WL 383944, at *5 (S.D.N.Y. Feb. 7, 2012) ("Blumenschein's service on FINRA's Board of Governors is insufficient to meet the objective test for assessing bias. Pinter has not made any showing that an individual member of the FINRA Board of Governors, or indeed the Board of Governors as a whole, has any influence over the selection of FINRA [Dispute Resolution] arbitrators, their compensation, or their assignment to panels. At the very most, he has raised the specter of an appearance of bias, insufficient grounds for disturbing an arbitration award." (internal quotation marks omitted)).

Finally, with respect to the alleged bias created by the FINRA defense, the Court finds the Louisiana Retirees' characterization of the defense somewhat misleading. This defense—one of many advanced by Pershing—was essentially a causation argument: Even if Pershing had notified the regulators of any concerns it had regarding Stanford Group Company, it would not have made a difference in terms of shutting down the Ponzi scheme because the regulators and law enforcement agencies already knew far more about Stanford Group Company than anything Pershing could have reported. However the defense is characterized, the Court is not at all convinced that *Pershing's assertion* of a particular legal theory demonstrates that the *arbitration panel* was biased.

14

Even when all of the decisions of the arbitration panel are considered collectively, the Louisiana Retirees' allegations fall far short of meeting the "onerous burden" required to prove panel bias. *See Caughran*, 354 F. App'x at 852.[3] At most, the Court is "left with nothing more than speculative assertions in [the Louisiana Retirees'] brief, which are insufficient to establish that vacatur is warranted under Section 10(a)(2)." *See id.* The second argument advanced by the Louisiana Retirees for vacating the arbitration award is rejected.

**C.**

The Louisiana Retirees' final argument is that "the Panel committed manifest error reviewing the evidence that was actually presented to the arbitration hearing based upon the review standard of the Second Circuit because of the application of New York Law." R. Doc. No. 154-7, at 4. Essentially, the Louisiana Retirees argue here that the Court should vacate the arbitration award because the arbitrators reached the wrong result.

It is absolutely clear in the Fifth Circuit that "Section 10(a) does not provide for vacatur of an arbitration award based on the merits of a party's claim." *Caughran*, 354 F. App'x at 851. Under the FAA, federal courts "do not have authority to conduct a review of an arbitrator's decision on the merits." *Id.* While at one point in time the Fifth Circuit permitted vacatur based on "manifest disregard of the law," it expressly

---

[3] To the extent the Louisiana Retirees also rely on other, less fully briefed decisions of the arbitration panel to demonstrate bias, the Court also finds that those decisions are not sufficient to constitute "direct, definite" evidence of partiality. *See Caughran*, 354 F. App'x at 852.

15

rejected that ground for reversing a panel's decision in *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009). There, the Fifth Circuit confirmed that "[i]n the light of the Supreme Court's clear language that, under the FAA, the statutory provisions are the exclusive grounds for vacatur, manifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected." *Id.* at 358.

In an effort to avoid the Fifth Circuit's rule, the Louisiana Retirees argue that the New York choice-of-law provision in their contract with Pershing calls for the application of Second Circuit law to this decision. In the Second Circuit, manifest disregard of the law remains a basis for vacating an arbitration panel's decision in certain limited circumstances. *See T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). But Second Circuit law does not govern this action.

The Fifth Circuit holds that "a choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 342 (5th Cir. 2004). If the arbitration agreement does not expressly reference New York arbitration law but instead contains only a generic choice-of-law provision, the Fifth Circuit applies the vacatur standards of the FAA. *See Cooper*, 832 F.3d at 544. There is no dispute in this case that the choice-of-law provision in the contract is a general choice-of-law provision and that it does not refer to New York arbitration law. *See* R. Doc. No. 154-7, at 32 n.35. As such, the FAA's rules for vacatur apply. This Court is guided by the

FAA as interpreted by the Fifth Circuit, irrespective of what courts located in the Second Circuit must be guided by.[4]

## IV.

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment filed by the Louisiana Retirees is **DENIED** and that the motion for summary judgment filed by Pershing is **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the arbitration panel in favor of Pershing LLC and against the Louisiana Retirees is **CONFIRMED**. Pershing LLC shall provide the Court with a proposed judgment no later than **Thursday, May 25, 2017 at Noon**.

New Orleans, Louisiana, May 22, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[4] Regardless, this Court finds no circumstances evidencing manifest disregard of the law by the arbitration panel.